**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**CLARENCE LEE ARTIS, JR,**

                     **Plaintiff,**

  **vs.**                                       **9:14-CV-1116
                                                         (MAD/ATB)**

**J. DISHAW,**

                     **Defendant.**
_____

**APPEARANCES:**                               **OF COUNSEL:**

**CLARENCE LEE ARTIS, JR
10-B-0810**
Clinton Correctional Facility
P.O. Box 2000
Dannemore, New York 12929
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**         **RYAN W. HICKEY, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff *pro se* Clarence Lee Artis, Jr. commenced this action pursuant to 42 U.S.C. § 1983, alleging that Defendant and others committed several civil rights violations during his confinement at the Upstate Correctional Facility ("Upstate C.F."). Dkt. No. 1. Plaintiff also filed an application to proceed *in forma pauperis* ("IFP"). Dkt. No. 2. On February 4, 2015, the Court granted Plaintiff's IFP application, but determined that, pursuant to 28 U.S.C. §§ 1915(e) and 1915A, the complaint was subject to dismissal for failure to state a claim upon which relief could

be granted. Dkt. No. 8. In light of Plaintiff's *pro se* status, the Court provided Plaintiff an opportunity to file an amended complaint. Dkt. No. 8 at 11. Plaintiff filed an amended complaint on February 23, 2015. Dkt. No. 9. On April 1, 2015, this Court issued a Decision and Order dismissing the following claims for failure to state a claim upon which relief may be granted: harassment and verbal abuse; Eighth Amendment deliberate indifference; Eighth Amendment conditions of confinement; Eighth Amendment excessive force; Eighth Amendment food tampering claims against Debouchie; First Amendment religion claims; conspiracy; and claims against Uhler and Schneiderman. Dkt. No 11 at 17. The only remaining claims from the amended complaint are those against Defendant Dishaw. Dkt. No. 11 at 10-11. Plaintiff alleges that Defendant Dishaw (1) violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment when Defendant refused to provide Plaintiff with food and (2) violated Plaintiff's First Amendment rights when Defendant wrote a false misbehavior report against Plaintiff in retaliation for a grievance that Plaintiff filed against Defendant. Dkt. No. 11 (citing Dkt. No. 9 at 8).

On April 22, 2016, Defendant filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56 arguing that Plaintiff (1) failed to exhaust administrative remedies, (2) failed to establish a First Amendment retaliation claim, (3) failed to establish an Eighth Amendment food tampering claim, and (4) Defendant is entitled to qualified immunity. Dkt. No. 25-2. On May 2, 2016, Plaintiff filed a response in opposition to the Defendant's motion. Dkt. No. 28. On May 26, 2016, Defendant filed a reply to Plaintiff's response and Plaintiff filed a sur-reply on June 3, 2016. Dkt. Nos. 31, 32.

On September 12, 2016, Magistrate Judge Baxter issued a Report-Recommendation in which he recommended granting Defendant's motion for summary judgment. Dkt. No. 33. On

October 3, 2016, Plaintiff objected to the Report-Recommendation, alleging Defendant starved, assaulted and harassed him, "used [him] as a fighting dog," and "started writing [him] up in retaliation." Dkt. No. 34. For the following reasons, this Court agrees with Magistrate Judge Baxter that Defendant's motion for summary judgment should be granted.

## II. BACKGROUND

### A. Plaintiff's Allegations

The conduct giving rise to this case occurred at Upstate C.F. On July 9, 2014, Plaintiff got into a disagreement with Correction Officer McQuinn regarding Plaintiff breaking his fast for Ramadan. Dkt. No. 9 at 7. The next day, Plaintiff was moved "back down stairs" and was "stripped of his level."[1] Plaintiff asserts that while being escorted to a lower level, Defendant told Plaintiff that he would need to assault Victor A. Deponceau, another inmate, "if [he] wanted to eat regular trays and get extra trays and [tobacco]." Dkt. No. 9 at 8. Plaintiff filed a grievance against Defendant with respect to this issue on July 10, 2014. Dkt. No. 25-12 at 7. Plaintiff alleges that Defendant wrote a false misbehavior report on December 31, 2014 in retaliation. Dkt. No. 9 at 8. Plaintiff claims that he filed at least three grievances against Defendant, but stopped filing grievances because Defendant stopped feeding him, which caused him to be "really hungry" and lose thirty pounds. *Id.* Plaintiff further alleged that by the time he filed his amended complaint, he had lost fifty-two pounds as a result of filing grievances against Defendant and "not wanting to be used as a goon" for Defendant. *Id.*

---

[1] Plaintiff's "level" refers to the Progressive Inmate Movement System ("PIMS"), a system in which inmates may earn privileges for good behavior. Dkt. No. 25-10 at ¶ 21. In the PIMS, inmates with a higher PIMS level are eligible to be housed on a higher floor. *Id.* ¶ 23. An inmate's PIMS level is reduced when they receive a misbehavior report and consequently, the inmate is moved to a lower floor. *Id.* ¶ 23. Thus, as Judge Baxter inferred, when Plaintiff stated that he was "stripped of his level," this means that he was moved down to a lower floor of Upstate C.F. as a result of misbehavior. Dkt. No. 33 at 3 n.1.

# III. DISCUSSION

A. **Standard of Review**

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The initial burden of showing that no genuine issue of material fact exists, through the production of admissible evidence, lies with the party moving for summary judgment. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006) (citation omitted). Once the moving party has met its burden, the nonmoving party must produce evidence demonstrating that genuine issues of material fact remain in dispute. *Id.* at 273 (citations omitted). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Finally, granting summary judgment is only justified when the court finds that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir.

4

2002) (citation omitted).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). "However, a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## B.     Plaintiff's Objection

In Plaintiff's objection to Magistrate Judge Baxter's Report-Recommendation, Plaintiff asserts that Defendant "used [Plaintiff] as a fighting dog" and when Plaintiff protested, Defendant starved, assaulted and harassed Plaintiff and "started writing [Plaintiff] up in retaliation." Dkt. No. 34. Plaintiff's assertions in the objection to the Report-Recommendation are nearly identical to Plaintiff's assertions made in the amended complaint. Dkt. No. 9 at 8.

## C.     Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is applicable in this case because it "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In order to correctly exhaust administrative remedies under the PLRA, the inmate must complete the administrative review process in accordance with the rules

applicable to the particular institution in which he is confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). In New York state prisons, the Department of Corrections and Community Supervision ("DOCCS") has a well-established three-step inmate grievance program. *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (2013).

In general, the DOCCS Inmate Grievance Program ("IGP") involves the following procedure for filing grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the incident. *Id.* at § 701.5(a)(1). Upon receipt of the grievance, a representative of the facility's Inmate Grievance Resolution Committee ("IGRC") has up to sixteen calendar days to informally resolve the issue. *Id.* at § 701.5(b)(1). If the matter is not resolved informally, then the full IGRC must conduct a hearing within sixteen calendar days of receipt of the grievance, *id*. at § 701.5(b)(2), and issue a written decision within two working days of the conclusion of the hearing. *Id*. at § 701.5(b)(3).

Next, the grievant may appeal the IGRC's decision to the facility's superintendent within seven calendar days. *Id.* at § 701.5(c)(1). The superintendent must issue a written decision within twenty calendar days for all grievances that do not involve a DOCCS-wide policy issue. *Id.* at § 701.5(c)(3)(ii). Finally, within seven working days of receipt of the superintendent's written decision, a grievant may appeal to the Central Office Review Committee ("CORC"). *Id.* at § 701.5(d)(1)(i). Upon receipt of the appeal, CORC has thirty calendar days to issue a written decision. *Id.* at § 701.5(d)(3)(ii).

Until recently, the Second Circuit applied a three-prong analysis, the *Hemphill* inquiry, to determine if a prisoner has failed to exhaust his available administrative remedies. *Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004). The *Hemphill* inquiry first asked "whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the

prisoner." *Id.* at 686. If those remedies were available, the second inquiry was "whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id*. If the remedies were available and the defendant did not forfeit and was not estopped from raising the non-exhaustion defense, the final inquiry was "whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.*

In 2016, the Supreme Court rejected the Second Circuit's "extra-textual" exception of taking into account of "special circumstances" to justify a prisoner's failure to comply with administrative procedural requirements. *See Ross v. Blake*, 136 S. Ct. 1850, 1856-57 (2016). The Court indicated that the mandatory exhaustion regime of the PLRA "foreclos[es] judicial discretion." *Riles v. Buchanan*, 656 Fed. Appx. 577, 580 (2d Cir. 2016) (quoting *Ross*, 136 S.Ct. at 1857). The Court in *Ross* held that the only limit to the PLRA's exhaustion requirement is that "[a]n inmate need exhaust only such administrative remedies as are 'available.'" *Ross*, 136 S.Ct. at 1862. An administrative procedure is unavailable when

> (1) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) it is so opaque that is becomes, practically speaking, incapable of use; or (3) prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

*Riles v. Buchanan*, 656 Fed. Appx. 577, 580 (2d Cir. 2016) (quoting *Ross*, 136 S.Ct. at 1859-60) (internal citations omitted).

Defendant asserts that Plaintiff has failed to exhaust his administrative remedies for both the Eighth Amendment food tampering claim and the First Amendment retaliation claim.

### *1. Exhaustion of Food Tampering Claim*

7

Defendant claims that the Upstate C.F. inmate grievance office does not have any record of any grievances filed by Plaintiff against Defendant for denial of food causing him to lose between thirty and fifty-two pounds. Dkt. No. 25-2 at 10. Additionally, Assistant Director Hale states that the CORC has no record of any appeal related to Defendant refusing to provide food to Plaintiff. Dkt. No. 25-6 at ¶ 11. Plaintiff did file several grievances regarding denial of food, but none of these grievances constitute an exhaustion of administrative remedies against Defendant. On July 10, 2014, Plaintiff filed a complaint regarding portion sizes, indicating that he "used to weigh 248 pounds now [he weighed] less than 210 pounds," but this grievance makes no mention of Defendant. Dkt. No. 28-1. Plaintiff filed a grievance on July 17, 2014 which asserted that Defendant offered to give Plaintiff more trays of food if he assaulted another inmate, but this grievance does not allege that Defendant denied Plaintiff food. Dkt. No. 25-12 at 7. On December 24, 2014, Plaintiff filed a grievance entitled "Denied Tray/Tried to Provoke Fight," but this grievance was not appealed to the CORC. Dkt. No. 25-12 at 2. In response to Defendant's motion for summary judgment, Plaintiff claims that he spoke to sergeants and lieutenants and "constantly grieved" his situation. Dkt. No. 28 at 3. However, speaking to sergeants and lieutenants does not excuse failure to use the grievance process. *Macias v. Zenk*, 495 F.3d 37, 44-45 (2d Cir. 2007). Since Plaintiff did not appeal any of his grievances to the CORC regarding denial of food by Defendant, he did not exhaust his administrative remedies with respect to his Eighth Amendment food tampering claim. As such, since none of the exceptions to the exhaustion requirements are applicable, the Court finds that this claim is subject to dismissal for Plaintiff's failure to exhaust.

**D.    Eighth Amendment Claim**

Prisons are required under the Eighth Amendment to provide for the basic human needs of

those incarcerated, including "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (per curium) (citation and internal quotation marks omitted). The deprivation must be sufficiently serious to warrant Eighth Amendment protection. *See, e.g., Beckford v. Portuondo*, 151 F. Supp. 2d 204, 213 (N.D.N.Y. 2001) (finding a deprivation of two of three meals per day for eight days created an issue of material fact sufficient for Eighth Amendment claim to survive summary judgment); *Moss v. Ward*, 450 F. Supp. 591, 596-597 (W.D.N.Y. 1978) (finding the denial of food for four consecutive days and reduced food for three days thereafter sufficient to violate prisoner's Eighth Amendment rights). Where a particular diet is medically required, denial of a smaller number of meals may be sufficient in some circumstances. *See Abdush-Shahid v. Coughlin*, 933 F. Supp. 168, 180 (N.D.N.Y. 1996) (citing *Robles*, 725 F.2d at 15-16).

Plaintiff asserts that Defendant violated his Eighth Amendment right to be free from cruel and unusual punishment when Defendant allegedly deprived him of food over an extended period of time causing him to lose between thirty and fifty-two pounds. Dkt. No. 9 at 8. While Plaintiff alleges "sometimes [Defendant] wouldn't give [him] a tray at all," he does not specify any dates that he was deprived food. *Id.*

Defendant contends that he has never deprived Plaintiff of his meal tray or tampered with Plaintiff's food. Dkt. No. 25-10 at ¶ 29. Defendant states that he is normally assigned to the "A" Gallery in 9 Building and, following the December 31, 2014 misbehavior report, Plaintiff was housed in the "C" gallery; therefore, Defendant could not be responsible for the alleged denial of food to Plaintiff after December 31, 2014. *Id.* at ¶ 32. Further, Defendant is normally assigned to "Tour II" which runs from 6:00 a.m. to 2:00 p.m.; thus, he is not on duty during the dinner

9

distribution which occurs at approximately 4:30 p.m. *Id.* at ¶ 31. To support this argument, Defendant presents Plaintiff's internal movement history, which shows Plaintiff's cell location from July 10, 2014 to March 28, 2015, and the 9 Building Logbook, which shows when Defendant was on duty and keeps track of the distribution of meals. *See* Dkt. No. 25-14. The 9 Building Logbook also indicates that when Defendant was on duty, breakfast and lunch were distributed to all inmates, including Plaintiff at all relevant times. *See id.*; *see also* Dkt. No. 25-10 at ¶ 35. The Logbook shows that on February 12, 2015, Plaintiff refused a tray during lunch distribution; however, Defendant was not on duty on February 12, 2015. Dkt. No. 25-19 at 19.

Moreover, in his July 10, 2014 grievance, which is prior to the allegations Plaintiff made against Defendant for retaliation and food deprivation, Plaintiff claimed that he used to weigh 248 pounds, but that he lost over thirty pounds due to insufficient portions. Dkt. No. 28-1 at 3. This grievance made no mention of Defendant or the alleged outright denial of food. *Id*. Further, on July 10, 2014, Plaintiff's weight was being monitored after being placed on a "restricted diet" and his weight was listed at 205 pounds. Dkt. No. 26 at ¶ 14. Plaintiff's weight loss prior to the incidents at issue further supports the fact that Defendant was not the cause of Plaintiff's weight loss.

Defendant also argues that Plaintiff's weight loss does not amount to an objectively serious condition under the Eighth Amendment. Dkt. No. 25-2 at 17. Nurse Administrator Nancy Smith indicates that, according to Plaintiff's medical records, Plaintiff experienced a total weight loss of ten pounds between July 10, 2014 and February 6, 2015. Dkt. No. 26 at ¶ 24. Between February 6, 2015 and May 27, 2015 Plaintiff gained back these ten pounds plus nine additional pounds. *Id.* Even at Plaintiff's lowest weight of 195 pounds, his temporary weight loss was not sufficient to create a serious danger to the health of the inmate because, while Plaintiff's Body

Mass Index ("BMI") fluctuated slightly, his BMI never went below the overweight range.[2] *Id.* at ¶¶ 14, 25.

Based on the foregoing, the Court finds that Plaintiff has failed to put forth any evidence that could lead a reasonable juror to find that Defendant caused his weight loss or that his weight loss caused serious damage to his health; therefore, Plaintiff's Eighth Amendment claim is dismissed.

**E.     First Amendment Retaliation**

"Courts properly approach prisoner retaliation claims 'with skepticism and particular care,' because 'virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quotation and other citation omitted). "To prove a First Amendment retaliation claim under Section 1983, a prisoner must show . . . '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)).

"Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis*, 320 F.3d at 353 (internal quotation marks and citation omitted). In making this determination, courts are to "bear in mind" that "prisoners may be required to tolerate more

---

[2] BMI is a measure of body fat based upon height and weight, used as a guide to healthy weight for patients. Dkt. No. 26 at ¶ 8. According to the National Heart, Lung and Blood Institute, a BMI less than 18.5 is considered underweight; a BMI between 18.5 and 24.9 is considered normal; a BMI between 25 and 29.9 is considered overweight; and a BMI over 30 is considered obese. *Id.* at ¶ 9. Between July 10, 2014 and May 27, 2015, Plaintiff's BMI fluctuated between 27.2 and 29.8. *Id.* at ¶¶ 14-23.

11

than average citizens, before a retaliatory action taken against them is considered adverse." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (internal quotation marks and citations omitted). The "test is objective, not subjective, and must be so, since the very commencement of a lawsuit would otherwise be dispositive on the issue of chilling." *Davidson v. Bartholome*, 460 F. Supp. 2d 436, 447 (S.D.N.Y. 2006) (citations omitted).

In determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, factors to be considered include: "(i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation." *Cole v. New York State Department of Correctional Services*, No. 9:10-CV-1098, 2012 WL 4491825, *11 (N.D.N.Y. Aug. 31, 2012) (citing *Colon*, 58 F.3d at 872-73).

Upon satisfying his initial burden, "the burden shifts to defendants to establish that the same adverse action would have been taken even in the absence of the plaintiff's protected conduct, *i.e.*, 'even if they had not been improperly motivated.'" *Davidson v. Desai*, 817 F. Supp. 2d 166, 194 (W.D.N.Y. 2011) (quoting *Graham*, 89 F.3d at 80). "At the summary judgment stage, if the undisputed facts demonstrate that the challenged action clearly would have been taken on a valid basis alone, defendants should prevail." *Davidson v. Chestnut*, 193 F.3d 144, 149 (2d Cir. 1999); *see also Murray v. Hulihan*, 436 Fed. Appx. 22, 23 (2d Cir. 2011) ("Defendants cannot be liable for First Amendment retaliation if they would have taken the adverse action even in the absence of the protected conduct").

In the present matter, the Court finds that the undisputed facts do not support Plaintiff's

12

retaliation claim. First, although the five-month period between the alleged protected activity – the July 10, 2014 grievance – and the issuance of a misbehavior report could create an inference of a causal connection based on temporal proximity, none of the other factors support such a causal connection. The record makes clear that Plaintiff was disciplined on several occasions between May 2014 and December 2014, as evidenced through the reduction of his PIMS level. *See* Dkt. No. 25-13 at 3-4. Further, Plaintiff was not vindicated at the disciplinary hearing on the misbehavior report. Finally, Defendant denied any retaliatory motive for his conduct. Rather, as discussed below, both Plaintiff's and his roommate's testimony at the disciplinary hearing demonstrate that the misbehavior report was issued not for any alleged retaliatory reasons, but because Plaintiff engaged in the conduct described in the misbehavior report. As such, the Court finds that Plaintiff has failed to put forth sufficient facts "to support an inference that the protected conduct played a substantial part in the adverse action." *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002).

Additionally, the Court finds that Magistrate Judge Baxter correctly determined that, even had Plaintiff demonstrated a causal connection, his claim still fails because the undisputed facts establish that Defendant would have taken the same action even in the absence of the protected conduct. *See Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003). The misbehavior report at issue charged Plaintiff with having an untidy cell, harassment, refusing to obey a direct order, and threats. *See* Dkt. No. 25-5 at 1. As set forth in Magistrate Judge Baxter's Report-Recommendation, at the disciplinary hearing, Plaintiff and his cell-mate both admitted that Defendant accurately set forth the events at issue and admitted that Plaintiff engaged in the charged conduct. *See* Dkt. No. 33 at 29-30. Although they attempted to explain why Plaintiff's conduct was justified, the admission to the charged conduct clearly establishes that Defendant

13

would have taken the same action absent any protected activity.[3]

Based on the foregoing, the Court finds that Magistrate Judge Baxter correctly recommended that the Court should grant Defendant's motion for summary judgment as to Plaintiff's retaliation claim.

## IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Baxter's Report-Recommendation is **ADOPTED** in its entirety; and the Court further

**ORDERS** that Defendant Dishaw's motion for summary judgment (Dkt. No. 25) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 22, 2017
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

---

[3] In fact, during the disciplinary hearing, Plaintiff even admitted that he yelled the following at Defendant: "'Go fuck yourself I'm a grown man. You ain't telling me what to do. I'll fuck you up.'"